**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Equal Employment Opportunity, )
Commission                     )
                               )
              Petitioner,      )    No. CIV 09-0209-PHX-RCB
                               )
         vs.                   )          O R D E R
                               )
Bashas', Inc.,                 )
                               )
              Respondent.      )
_____)

### _Introduction_

In this action, petitioner, the Equal Employment Opportunity Commission ("EEOC"), is seeking to enforce an administrative subpoena which it served upon respondent, Bashas', Inc.  The EEOC issued that subpoena on May 28, 2008, as part of its investigation into the Commissioner's Charge that Bashas' "has, since at least

May, 2004, violated Title VII by discriminating against Hispanics due to their national origin." Mot. (doc. 10), exh. A thereto (doc. 10-3) at 2. That asserted discrimination took two forms: (1) "failing to pay Hispanic employees comparable wages to non-Hispanic employees[;]" and (2) "failing to promote Hispanics into management positions." Id.

Currently pending before the court is Bashas' "Motion for Leave to Conduct Limited Discovery" on the "issue of whether the Subpoena constitutes an abuse of process[.]" Id. at 2:2-3. Additionally, Bashas' "seeks discovery to confirm that its confidentiality concerns are well based." Id. at 2:4-5. As the discovery issue is a close question, the court will set a hearing on this discovery motion contemporaneously with the hearing on the underlying Application for an Order to Show Cause ("OSC") seeking enforcement of the subpoena.

### Background

The court assumes familiarity with the parallel action of Parra v. Bashas', 02-0591 ("Parra"), as well as the prior proceedings herein, as Parra v. Bashas' Inc., 2009 WL 1024615 (D.Ariz. April 15, 2009), recounts. A few of those facts are worth repeating and developing though because they take on new significance in the context of this dispute.

### I.  Parra Litigation

Responding to charges of discrimination against Bashas' by several Hispanics, the EEOC issued right-to-sue letters. After receipt of those letters, in April 2002, Messrs. Parra and Estrada, through their counsel, Davis, Cowell & Bowe ("the Davis firm"), filed a putative class action alleging national origin

discrimination in violation of Title VII of the 1964 Civil Rights
Act as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.* The
Parra plaintiffs allege, *inter alia*, that Bashas' discriminated
against them with respect to pay and working conditions. After the
filing of the Parra complaint, the EEOC closed all charges. Mot.
(doc. 10), exh. F thereto (Quincy Decl'n), at 16, ¶ 4:14-15.

Shortly after filing the first amended complaint in Parra, in
March 2004, the Impact Fund joined in the representation of the
plaintiffs therein. Discovery ensued during which Bashas' produced
fairly comprehensive wage charts for the years 1994-2003,
inclusive. Id. at 16:18-19. Bashas' also produced "spreadsheets
with more than 25 data fields containing personnel information for
each of the 44,698 employees listed." Id. at 16, ¶ 5:19-20.
Bashas' last produced such pay data in April 2004. Id. at 16,
¶ 5:20-21. As part of Bashas' disclosure in Parra, this court
issued two confidentiality orders, one of which "pertains directly
to a database which the EEOC is seeking through its enforcement
subpoena." Parra, 2009 WL 1024615, at *5.

After the Ninth Circuit remanded on the issue of class
certification of the pay claim, on February 2, 2009, this court
held a status conference. Because discovery had been closed since
April 2004, plaintiffs sought "updated discovery concerning the
status of [Bashas'] pay policy and its impact on the putative
class." Id. at *1 (internal quotation marks and citation omitted).
The court denied that request, "[f]inding that the time for the
discovery sought by Plaintiff has long since expired[.]" Id.
(internal quotation marks and citation omitted).
. . .

***II. EEOC Investigation***

Despite closing its files after issuing the right-to-sue letters in <u>Parra</u>, the EEOC continued with its investigation into purported discriminatory employment practices at Bashas'. Shortly after this court denied plaintiff's motion for reconsideration in <u>Parra</u> on the issue of certifying a class as to the pay claim, on May 11, 2006, the EEOC served a subpoena upon Bashas'. Mot. (doc. 10), exh. F thereto (Quincy Decl'n) at 17, ¶ 8; and exh. D thereto at 10-11. Among the subpoenaed documents were "wage charts in effect between 1998 and the present, and all documents reflecting the racial or national origin composition of hourly employees[.]" <u>Id.</u> (internal quotation marks omitted). Bashas' objected to that subpoena on a variety of grounds, including that the EEOC had closed the individual charges four years earlier. <u>Id.</u>

Even in the face of those objections and Bashas' failure to produce the subpoenaed documents, the EEOC did not respond to Bashas' objections. <u>Id.</u> Nor did it move to enforce the May 11, 2006, subpoena. <u>See id.</u> Instead, four months later, on September 12, 2006, the EEOC advised Bashas' that it was "re-open[ing]" the charges as to the eight individuals who had filed EEOC charges against Bashas' in 2002, including plaintiffs Parra and Estrada. <u>Id.</u>; <u>see also</u> Mot. (doc. 10), exh. E thereto at 13.

***III. United Food and Commercial Workers Union ("UFCW")***

While the <u>Parra</u> action was ongoing and the EEOC continued its investigation into the "re-opened" charges, Bashas' claims that the UFCW "launched a 'corporate campaign' to force [it] to voluntarily recognize UFCW as the bargaining representative of its employees without" their vote. Mot. (doc. 10) at 4:3-4; <u>see also</u> exh. F

-4-

thereto (Quincy Decl'n) at 15, ¶ 2; and at 17, ¶ 9.  Bashas'

contends that on a fairly regular basis, the Davis firm and UFCW

"communicate regarding . . . [union] organizing efforts as well as

the *Parra* litigation."  <u>Id.</u>, exh. F thereto (Quincy Decl'n) at 17,

¶ 10:16-18 (emphasis added).  Further, it "appears" to Bashas'

counsel "that the EEOC is in communication with the *Parra*

plaintiffs' counsel relating to matters extending beyond the *Parra*

litigation.  <u>Id.</u> at 17, ¶ 11:19-20.

## *IV.  Commissioner's Charge*

Eventually, on May 9, 2007, the EEOC filed a Commissioner's

Charge against Bashas'.  Mot. (doc. 10), exh. A thereto at 2.  As

in <u>Parra</u>, the Commissioner asserts that Bashas' has violated Title

VII by discriminating against Hispanics based upon their national

origin with respect to wages.  <u>See id.</u>  The time frame of the

Commissioner's Charge is "since at least May 2004," which is

notable given this court's refusal in <u>Parra</u> to allow discovery as

to Bashas' pay polices *after* April 2004.  <u>See id.</u>

In the year following the filing of the Commissioner's Charge,

the EEOC issued another subpoena and three "requests for

information."  <u>Id.</u>, exh. F thereto (Quincy Decl'n) at 18, ¶ 12:3-5;

<u>see also</u> Resp. (doc. 14) at 2:11-14.  While acknowledging that

"Bashas' submitted partial responses to the requests," the EEOC

stresses that Bashas' has "failed to fully respond to the EEOC's

Request for Information."  Resp. (doc. 14) at 2:14-15.

For its part, Bashas' explains that despite "repeat[ed]

request[s][,]" the EEOC has "refused" to provide Bashas' "with even

the most basic information about the charge so that [it] c[an]

defend itself."  Mot. (Doc. 10), exh. F thereto (Quincy Decl'n) at

18, ¶ 14:12-14.  Given what Bashas' perceives to be the broad scope

of the EEOC's investigation, it "argue[s] that fundamental due

process and fairness require[s]" some notice as to "exactly" what

allegations the EEOC believes "warrant a Commissioner's Charge."

Id. at 18, ¶ 14:18-21.

In addition to lack of notice concerns, Bashas' has "grave

concerns about the sharing of confidential information between the

EEOC, the Impact Fund, and the UFCW's attorneys," the Davis firm.

Id. at 18, ¶ 15:22-23.  To allay those concerns, "Bashas' proposed

that the EEOC enter into a confidentiality agreement – similar to

the one that the parties signed in the *Parra* action – concerning"

any disclosures to the EEOC.  Id. at 18, ¶ 15:24-26.  According to

Bashas', "the EEOC did not respond to Bashas' proposed

confidentiality agreement nor provide any assurances that it would

not share the information with the above entities[.]" Id. at 18-19,

¶ 15.

## V.  *EEOC Subpoena*

Instead, on May 28, 2008, the EEOC issued the subpoena which

is the subject of this enforcement action.  That subpoena was

served upon Bashas' by certified mail the next day, May 29, 2008.

OSC (doc. 1), Manget Aff. (doc. 2-2) attached thereto at 3-4, ¶¶

14-15; and attachment 8 at 50.[1]  That subpoena directed Bashas' to

mail to the EEOC investigator, on June 13, 2008, compact disks

containing a vast range of employee data, such as compensation

details, ethnicity, and union eligibility.  See Mot. (doc. 10),

---

[1]     The EEOC also provided a "domestic return receipt," evidently to
establish service upon Bashas' counsel, but it is impossible to discern the date
of service from the copy provided to the court.  See OSC (doc. 1), Manget Aff.
thereto (doc. 2-2); and attachment 8 at 50.

exh. K thereto at 47-51.

On the specified date, June 13, 2008, Bashas' informally asserted its objections to that subpoena. Mot. (doc. 10), exh. F thereto (Quincy Decl'n) at 19, ¶ 16:6-7. The EEOC took no action for approximately seven months. But then, on February 2, 2009, the day this court denied post-April 2004 pay data discovery in <u>Parra</u>, the EEOC filed an OSC as to why the May 28, 2008, subpoena should not be enforced. The EEOC's stated basis for filing that OSC is twofold. First, the EEOC declares that Bashas' has not "compl[ied] with the subpoena." Resp. (doc. 14) at 2. That failure has, from the EEOC's viewpoint, "delayed and hampered [its] investigation." OSC (doc. 1) at 2, ¶ 9:19-20. Second, the EEOC declares that Bashas' has not "serve[d] a petition to revoke" or modify the subpoena in accordance with 29 C.F.R. § 1601.16(b)(1). Resp. (doc. 14) at 2:26-27. That regulation requires that "[a]ny person served with a subpoena who intends not to comply *shall* petition . . . to seek its revocation or modification[,] . . . within five days . . . after service of the subpoena." 29 C.F.R. § 1601.16(b)(1) (emphasis added).

Initially, Bashas' had until April 6, 2009, by which to file its response to the OSC.[2] <u>See</u> Doc. 4. Rather than responding, on April 3, 2009, Bashas' filed this motion seeking leave to conduct limited discovery. Such discovery is necessary because, as Bashas' depicts it, the "EEOC has engineered" the Commissioner's Charge and the subpoena, "in an effort to funnel information to the plaintiffs

_____

[2] Since then, Bashas' has been granted two extensions. Most recently, this court granted Bashas' leave to file its response to the OSC no later than five days after the ruling on this motion for leave to conduct limited discovery. <u>See</u> Doc. 18.

1 and counsel in the pending *Parra* litigation, and in furtherance of

2 the UFCW's efforts to apply increased pressure on Bashas'" to

3 unionize. Mot. (doc. 10) at 8:6-9. Put differently, Bashas'

4 believes that by filing the Commissioner's Charge, and then

5 issuing the subpoena which is the subject of this enforcement

6 action, the EEOC engaged in abuse of process.

7      To substantiate its abuse of process theory, Bashas' professes

8 to be seeking leave to engage in "very limited discovery[.]" Id. at

9 11:10. First, it wants to "serve written discovery requests" not

10 just upon the EEOC, but also upon "the named plaintiffs *and*

11 plaintiffs' counsel in the *Parra* action, including the Impact Fund

12 and [the] Davis [firm] . . . individually, and the UFCW[.]" Id. at

13 11:12-15 (emphasis added). Not only is Bashas' request fairly

14 broad in terms of those from whom it is seeking discovery, but the

15 scope of the documents which it is seeking also is quite broad.

16      Bashas' wants "to obtain documents pertaining to *any*

17 communications, information or documents provided between the EEOC

18 and these third parties relating to this Commissioner's Charge *or*

19 *any other charges* currently under investigation by the EEOC." Id.

20 at 11:15-18 (emphasis added). Lastly, Bashas' wants to "seek *any*

21 documents relating to the *Parra* litigation, . . . , provided to the

22 EEOC by the *Parra* plaintiffs or their counsel." Id. at 11:18-20

23 (emphasis added). Assuming cooperation by the third parties,

24 Bashas' anticipates completing this discovery within six weeks.

25 For now the court will overlook the breadth of these discovery

26 requests and, instead, focus upon Bashas' claimed entitlement to

27 conduct discovery in the first place.

28      The EEOC challenges Bashas' entitlement to any discovery.

Characterizing this discovery motion as an attempt by Bashas' to seek "back door access to the EEOC's open investigative file[,]" the EEOC asserts that such access is "contrary to express prohibitions in Title VII, . . . and the Freedom of Information Act ("FOIA")[.]" Resp. (doc. 14) at 4:4-6. Similarly, depicting Bashas' discovery request as "a fishing expedition into an open law enforcement file[,]" the EEOC states that Bashas' must "*first* demonstrate an abuse of process to support" this discovery request. Id. at 4:16-20 (emphasis in original).

Likewise, according to the EEOC, there is no justification for discovery here in that Bashas' has not shown a lack of good faith by the Commissioner in filing the charge. The EEOC goes on to challenge the sufficiency of the evidence upon which Bashas' is relying. Turning to Bashas' confidentiality concerns, the EEOC retorts that it "has and will continue to comply with" Title VII and FOIA's confidentiality provisions. Id. at 7:26-28. Thus, from the EEOC's perspective, the confidences of Bashas' and its employees "are adequately protected." Id. at 8:14.

## ***Discussion***

"The EEOC bears the [p]rimary responsibility for enforcing Title VII." EEOC v. Federal Exp. Corp., 558 F.3d 842, 849 (9th Cir. 2009) (internal quotation marks and citation omitted).[3] As part of Title VII's "integrated, multistep enforcement procedure[,]" id. (internal quotation marks and citation omitted), individuals, as well as the EEOC Commissioner, have the authority to file a charge.

---

[3] Bashas' cites to a prior version of Federal Exp., 543 F.3d 531 (9th Cir. 2008), which was "withdrawn and replaced" by the "Amended Opinion" cited above on March 3, 2009 -- prior to the filing of Bashas' motion and reply. See Federal Exp., 558 F.3d at 844.

Id. (citations omitted).  The filing of a discrimination charge

triggers the EEOC's mandatory obligation "to investigate the charge

and determine whether there is reasonable cause to believe that it

is true."  Id. (internal quotation marks and citations omitted).

"To enable the [EEOC] to make informed decisions at each stage of

the enforcement process, [Title VII] confers a broad right of

access to relevant evidence[.]" Id.  (internal quotation marks and

citation omitted).  "In acquiring such evidence, the EEOC may

exercise all powers enjoyed by the NLRB [National Labor Relations

Board] under 29 U.S.C. § 161, including the authority to issue

administrative subpoenas and to request judicial enforcement of

those subpoenas."  Id. (citing, inter alia, 42 U.S.C. § 2000e-9).

Section 161 provides in relevant part:

> In case of . . . refusal to obey a subpoena
> issued to any person, any district court of
> the United States . . . , within the jurisdiction
> of which the inquiry is carried on or within the
> jurisdiction of which said person is guilty of
> . . . refusal to obey is found or resides or
> transacts business, upon application by the [EEOC]
> shall have jurisdiction to issue to such person
> an order requiring such person to appear before the
> [EEOC], . . . , there to produce evidence if so
> ordered[.]

29 U.S.C. § 161(2) (West 1998) (emphasis added).  Here, because the

EEOC is carrying out its inquiry within the district of Arizona,

and, according to the EEOC, because Bashas' is refusing to fully

comply with the EEOC's subpoena, section 161(2) confers

jurisdiction on this court.  See EEOC v. City of Milwaukee, 54

F.Supp.2d 885, 890 n.2 (E.D.Wis. 1999) (where EEOC had filed Title

VII charges against a city, the court found it had jurisdiction

partially based upon 29 U.S.C. § 161(2) "because the City is

located within this dis-trict [sic][]").

- 10 -

# III. "Counter-discovery"

For the most part, Bashas' and the EEOC agree on the governing legal standards. Both rely heavily upon In re EEOC, 709 F.2d 392 (5th Cir. 1983). There, the Fifth Circuit "recognized . . . that facts vary so much from case to case that it is often very difficult to articulate a single general standard. Id. at 399 (citation omitted). Despite that difficulty, the Fifth Circuit adopted a "two-step approach" for EEOC subpoena enforcement actions - an approach which for the most part the Ninth Circuit follows. See id. at 399 (internal quotation marks and citation omitted).

The first step is for the EEOC to file a petition for enforcement which "fully complie[s] with the informal guidelines set out" by the Supreme Court in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Id. More specifically, the EEOC:

> must show [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the [agency's] possession, and [4] that the administrative steps required by the [agency's statutes or rules] have been followed.

Id. (quoting Powell, 379 U.S. at 57-58, 85 S.Ct. at 255) (other citations omitted). An agency such as the EEOC "generally complies with the Powell requirements . . . through the simple submission of appropriate affidavits." Id. (citation and footnote omitted).

Here, as part of its OSC, the EEOC includes the affidavit of Paul G. Manget, the "Enforcement Manager of the Phoenix District Office" of the EEOC, who is "responsible for the investigation of charges of employment discrimination." OSC (doc. 1), attached thereto (doc. 2-2) at 2, ¶ 1:1-3. Mr. Manget's affidavit could

have benefitted from a little more detail.  Nevertheless, given
that Bashas' is not challenging the sufficiency of that affidavit,
and given that the EEOC's burden at this point is not onerous, the
court finds that the first step in the enforcement process is met –
at least for present purposes.

At the second step, "an administrative defendant[][,]" such as
Bashas', has a "relatively heavy" burden.  <u>See</u> <u>In re EEOC</u>, 709 F.2d
at 400.  That is so because ordinarily, "a defendant is not
"'entitled to engage in counter-discovery to find grounds for
resisting' a subpoena[.]" <u>Id.</u> (quoting <u>United States v. Litton</u>
<u>Industries, Inc.</u>, 462 F.2d 14, 17 (9th Cir. 1972)).  According to
the Ninth Circuit, "district courts must be cautious in granting
discovery rights, lest they transform subpoena enforcement
proceedings into exhaustive inquisitions into the practices of
regulatory agencies."  <u>Reich v. Montana Sulphur & Chemical Co.</u>, 32
F.3d 440, 449 (9th Cir. 1994) (internal quotation marks and
citations omitted).

Consistent with the foregoing, "[a] limited amount of discovery
may be allowed if, for example, the defendant makes a *preliminary*
*and substantial demonstration of abuse*, that is, where the defendant
has presented meaningful evidence that the agency is attempting to
abuse its investigative authority."  <u>Reich</u>, 32 F.3d at 449 (internal
quotation marks and citations omitted).  "'Anything short of this
showing is not enough.'" <u>Id.</u> (quoting <u>In re EEOC</u>, 709 F.2d at 400).

A defendant seeking counter-discovery must meet this fairly
demanding standard partially due to the nature of subpoena
enforcement actions, which are "summary procedure[s][.]" <u>See</u> <u>EEOC v.</u>
<u>St. Regis Paper Co. – Kraft Div.</u>, 717 F.2d 1302, 1304 (9th Cir.

- 12 -

1983) (citations omitted).  Hence, in the Title VII context, the
Fifth Circuit has deemed as "absolutely unacceptable[] . . .
dilatory tactics at the subpoena enforcement stage[.]"  In re EEOC,
709 F.2d at 400 (footnote omitted).  Likewise, the Ninth Circuit in
St. Regis, explained that "[d]ue to the need for speedy
investigation of EEOC charges of employment discrimination,
discovery should be allowed against the EEOC only where *exceptional
circumstances* indicate an EEOC abuse of process."  St. Regis, 717
F.2d at 1304 (citing cases) (emphasis added).  Of course, in this
OSC, it is the EEOC's delay which is evident.  It has never sought
the information in its May 11, 2006 subpoena, and it waited over
eight months to seek to enforce its May 8, 2008 subpoena.

Given that the standard for allowing counter-discovery is a
showing by the defendant of "a preliminary and substantial
demonstration of abuse," as set forth above, there is no merit to
the EEOC's assertion that Bashas' must "*first* demonstrate an abuse
of process" before the court allows counter-discovery.  See Resp.
(doc. 14) at 4:17-18 (emphasis in original).  Indeed, requiring a
defendant to first *prove* abuse to support a discovery request to
substantiate an abuse of process claim would place the defendant in
an untenable "Catch-22" situation.

The court is fully aware, as Bashas' is quick to point out,
that this "preliminary and substantial demonstration" standard "does
*not* mean actual proof."  In re EEOC, 709 F.2d at 400 n. 5 (emphasis
in original).  Consequently, to satisfy this burden "[a]ll [Bashas']
needs to do is develop facts from which a court might *infer a
possibility* of some wrongful conduct by the [EEOC]."  See id.
(internal quotation marks omitted) (emphasis in original).  Whether

- 13 -

Bashas' has done so is key to the court's discovery determination.

Bashas' premises its abuse of process argument on three factors. The first is the timing of the EEOC's investigation and this action, which Bashas' asserts "creates a suspicion that the subpoena was not issued in good faith." Reply (doc. 16) at 3:24-25. Second, according to Bashas', "the EEOC has *seemingly* shared information relating to its confidential 'investigations' of Bashas'" with the <u>Parra</u> attorneys and/or the UFCW. <u>Id.</u> at 4:4-7 (citation omitted) (emphasis added)[4]. Bashas' believes that this purported sharing of information is not an isolated incident. Third, Bashas' contends that the EEOC's refusal to provide information underlying the Charge, its refusal to enter into a confidentiality agreement, and the EEOC's "extremely broad subpoena" combine to "impl[y] an improper ulterior motive" for issuing the Charge and the challenged subpoena. <u>Id.</u> at 4:19-20 and at 5:1 (footnote and citation omitted). Based upon the foregoing, Bashas' contends that it has made "a substantial demonstration of abuse of process warranting discovery." Reply (doc. 16) at 2:3-4 (emphasis omitted). Pending the hearing, at this juncture, the court will only comment upon some of these factors.

### A. Timing

It appears to be more than coincidental that on the same day this court denied discovery in <u>Parra</u> as to Bashas' post-April 2004 pay policy, the EEOC decided to file an OSC to enforce a subpoena encompassing such pay data, a subpoena which had been served over eight months earlier. It is a close question whether,

---

[4]     Newly added emphasis.

as Bashas' urges, the timing of the EEOC's filing of the OSC "creates a suspicion that the subpoena was not issued in good faith[,]" at least to a degree so as to warrant counter-discovery. See Reply (doc. 16) at 3:24-25 (citations omitted).

To support this argument, Bashas' relies solely upon <u>United States v. Giant Industries, Inc.</u>, 1981 WL 1277 (D. Ariz. June 17, 1981). There, at the same time defendant was the target of a criminal grand jury investigation, the Department of Energy ("DOE") issued an administrative subpoena. Purportedly the documents sought in that subpoena were necessary to a DOE regulatory compliance investigation. In opposing DOE's enforcement petition, the defendant asserted that the "subpoena was not issued in good faith but was intended to obtain information for use as evidence in a criminal prosecution." <u>Id.</u> at *1.

The court in <u>Giant Industries</u> held that "[t]he timing of the administrative subpoena create[d] a suspicion sufficient to entitle Giant to limited discovery . . . to determine whether the subpoena was issued for a legitimate purpose." <u>Id.</u> at *2. In reaching that conclusion, the court reasoned:

> Giant should not be compelled to produce . . . information requested by the administrative subpoena if the purpose of the subpoena is, in reality, . . . [to] enable the Government to obtain evidence to support criminal charges against Giant or its officers.

<u>Id.</u> The court then separately ruled on each of Giant's discovery requests, in a manner which appears to have narrowed the scope of the discovery sought by Giant.

There are some obvious factual difference between <u>Giant Industries</u> and the present action. Perhaps most significant is that the DOE's issuance of an administrative subpoena in <u>Giant Industries</u>

was preceded by a Department of Justice criminal investigation. Plainly there is no similar parallel criminal investigation here. Consequently, while the court does find troublesome the timing of the OSC, at this juncture, without more, the timing is not a sufficient basis for allowing counter-discovery.

### B. "Shared Information"

Bashas' fares no better with its argument that it is entitled to counter-discovery because the EEOC "seemingly shared information" with the _Parra_ attorneys and/or the UFCW. Essentially, it is Bashas' position that the _Parra_ attorneys and the UFCW have "learned of information harmful to Bashas' to which they would have no access except through the EEOC." Mot. (doc. 10) at 8:15-17. Bashas' claims to have "_repeatedly_ learned of incidents" where it believes the EEOC improperly provided such information to the _Parra_ plaintiffs' attorneys and to the UFCW. _See_ Mot. (doc. 10) at 8:14 (emphasis added). Similarly, Bashas' further asserts that "[t]ime after time" it "has learned that _Parra_ plaintiffs' counsel, the Impact Fund or the UFCW has knowledge of matters of which they should not be aware." _Id._ at 9:7-8.

Bashas' identifies only two specific instances where this alleged improper sharing of information occurred. Moreover, Bashas' did not elaborate at all as to the substance of the purportedly "harmful information."

Bashas' submits an affidavit from its counsel and an excerpt from a deposition taken in the related _Parra_ action to show the first instance of alleged information sharing. In that affidavit, Bashas' counsel avers that "Bashas' learned that Jocelyn Larkin, attorney for the _Parra_ class, was aware of a charge of

discrimination against Bashas' then being investigated by the EEOC."
Mot. (doc. 10), exh. F thereto (Quincy Decl'n) at 17, ¶ 11:21-23.
Because at that time "the EEOC had not yet filed suit against
Bashas' on th[at] charge," and because "Larkin was not involved in
th[at] charge[,] nor did she represent the charging party[,]"
Bashas' surmises that the EEOC was "in communication with the *Parra*
plaintiffs' counsel relating to matters extending beyond the <u>Parra</u>
litigation." <u>Id.</u> at 17, ¶ 11.

Of course, this argument is based upon conjecture. There is a
serious question whether the page and a half of deposition testimony
to which Bashas' cites supports its view of events. In that
portion, the witness is being questioned as to Bashas' hiring
practices on the Navajo reservation. <u>See</u> <u>id.</u>, Tab 1 thereto
(Sanford Dep'n) at 23-24. At least on the face of it, the scant
proffered deposition testimony does not advance Bashas' argument of
shared information between the Parra attorneys and/or the UFCW.

The second scenario which Bashas' maintains shows abuse of
process is the manner in which Bashas' first learned of this
enforcement action. As Kristy L. Nied, Bashas' "Director of
Communications[,]" describes it, Bashas' first learned of the filing
of the OSC when she received a call from a business reporter on
February 4, 2009 - two days after the filing of the OSC. Mot. (doc.
10), exh. L thereto (Nied Decl'n), at 2, ¶ 5. Ms. Nied declares
that during that call the reporter informed her that "he had
received information from the UFCW" that the EEOC had filed this
enforcement action, and he requested a comment from Bashas' on that
filing. <u>Id.</u> Ms. Nied further declares that she received a similar
request from a different reporter the next day, and he likewise

informed her that the UFCW was the source of his information as to the filing of this EEOC enforcement action.  See id.

Bashas' is unaware of any EEOC "announcement or press release" pertaining to this action.  Mot. (doc. 10) at 6:21-22.  Furthermore, Bashas' believes that "the filing of subpoena enforcement actions do not appear on commercial docketing services generally available." Id. at 6:22-23.  Therefore, Bashas' claims to be "at a loss as to how the union would have learned of this . . . action within days" of its filing "any other way than from the EEOC."  Id. at 6:24-7:1-2.

Assuming, arguendo, that events unfolded as Ms. Nied declares, i.e., that the EEOC informed the UFCW, who in turn informed the reporters, of the filing of this action, the question is whether this is sufficient to establish a "preliminary and substantial demonstration of abuse" of process.  See In re EEOC, 709 F.2d at 402.  Ms. Nied's declaration may well show that this is "a truly exceptional case, that is, [one] where the defendant has made a preliminary and substantial demonstration of abuse." See id. Similarly, Ms. Nied's declaration, although partially based upon hearsay, may constitute  "meaningful evidence" that the EEOC "is attempting to abuse its investigative authority[.]" Id. at 400 (internal quotation marks, citation and footnote omitted).  It is possible, however, that these purported concerns could be remedied by entry of a confidentiality order.  Accordingly, the question is whether the events as Ms. Nied describes them warrant counter-discovery or simply a confidentiality order.

Finally, the court is loathe to consider counter-discovery based upon the wholly unsubstantiated averment in Bashas' counsel's

declaration that "*upon information and belief*, the UFCW and *Parra* counsel," the Davis firm, "which also represents the UFCW regularly, communicate regarding the organizing efforts, as well as the *Parra* litigation." Mot. (Doc. 10), exh. F thereto (Quincy Decl'n) at 17, ¶ 10:16-18 (emphasis added). Plainly, this one qualified averment is not meaningful evidence of abuse of process by the EEOC. Without more, there is no link between these supposed communications and the EEOC's alleged abuse of process.

Bashas' makes much of the fact that the EEOC did not outright deny that it shared information. Subject to the positions of the parties at the OSC hearing, the court is not inclined to give much credence to this assertion because at this second-step the burden is on Bashas' to "make[] a preliminary and substantial demonstration of abuse[;]" the burden is not upon the EEOC. See <u>Reich</u>, 32 F.3d at 449 (internal quotation marks and citations omitted).

### C.  *"Ulterior Motive"*

Lastly, Bashas' is relying upon three factors which it believes in combination "impl[y] an improper ulterior motive" for issuing the challenged subpoena, and thus, by extension, a basis for engaging in counter-discovery. <u>See</u> Reply (doc. 16)at 5:1 (footnote and citation omitted). Bashas' first points to the EEOC's refusal to provide it "with even the most basic information underlying the charge[.]" <u>Id.</u> at 4:16-17. Next, Bashas' notes the "extremely broad" scope of the subpoena, seeking "computer files for over 40,000 former and current employees[.]" <u>Id.</u> at 4:19-20. Third, Bashas' heavily relies upon the EEOC's "continued dismissal of any possible consideration of a confidentiality agreement[.]" <u>Id.</u> at 7:23. The EEOC's unwillingness to enter into a confidentiality agreement as to the

subpoenaed information, from Bashas' perspective, "substantiate[s] its evidence of abuse of process." Id. at 5:9 (emphasis omitted).

The question is whether these factors, either alone or together, support a finding that this is "a truly exceptional case" so as to justify counter-discovery however. See In re EEOC, 709 F.2d at 402. To be sure, simply raising the specter of "due process and fairness" concerns based upon lack of notice is "too remote and too vague to warrant . . . [such] discovery." See Litton Industries, 462 F.2d at 17. Further, eventually it may be that the EEOC's asserted refusal to adequately notify Bashas' of the nature of the Commissioner's Charge could be the basis for a constitutional challenge to enforcing the subpoena, but the question now is whether it provides an adequate basis for allowing counter-discovery.

On the face of it, the challenged subpoena does appear to be fairly broad. Bashas' has not shown, and it does not necessarily follow, however, that an arguably broad subpoena means there has been an abuse of process. In an effort to equate a broad subpoena with an improper ulterior motive, Bashas' cites to EEOC v. First Alabama Bank of Birmingham, 440 F.Supp. 1381 (N.D. Ala. 1977), aff'd, 611 F.2d 132 (5th Cir. 1980). The facts before this court do not begin to approach the egregious facts of First Alabama, however.

Moreover, First Alabama was in a different procedural posture than the present case. There, the EEOC was seeking to enforce a subpoena against the bank; the bank was not seeking counter-discovery as is Bashas'. Not only that, First Alabama was issued following a trial, so that court had the benefit of a fully developed record. Accordingly, at this point in the litigation, First Alabama does not provide a sufficient basis upon for allowing

Bashas' to engage in counter-discovery.

As discussed above, the court has serious reservations as to the propriety of allowing counter-discovery in this subpoena enforcement action. At the same time, however, the court cannot ignore the broader context in which this particular dispute has arisen, and the timing of this OSC.

### *Conclusion*

Thus, for the reasons set forth herein, IT IS ORDERED that the "Motion for Leave to Conduct Limited Discovery" by respondent Bashas', Inc. (doc. 10) is set for hearing contemporaneously with the hearing on EEOC's Application for an OSC.

IT IS FURTHER ORDERED that, consistent with this court's May 6, 2009, order, Bashas' "shall file its Response" to the EEOC's Order to Show Cause Why an Administrative Subpoena Should Not be Enforced (doc. 1) "no later than five (5) days after" the filing of this order. See Doc. 18 at 1:18-19.

IT IS FINALLY ORDERED that Bashas', Inc. appear on the 30th day of June, 2009, at 1:30 p.m., in Courtroom 626, Sandra Day O'Connor Courthouse, 401 W. Washington Street, Phoenix, Arizona 85003, and show cause why it should not be compelled to comply with the subpoena issued to it. At the hearing, the parties each shall be prepared to submit a proposed confidentiality order.

DATED this 18th day of June, 2009.


Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record