**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Equal Employment )
Opportunity Commission, )
                              )
            Petitioner, )      No. CIV 09-0209 PHX RCB
                              )
      vs.                     )            O R D E R
                              )
Bashas', Inc.                 )
                              )
            Respondent. )
_____)

### *Introduction*[1]

Since at least since May 2006, petitioner, the Equal
Employment Opportunity Commission ("EEOC"), has been
attempting to obtain, *inter alia*, pay scale information from
respondent, Bashas', Inc.  The EEOC has been seeking that
information as part of its ongoing investigation into whether
Bashas' has engaged in discrimination against its Hispanic

---

[1]    Assuming familiarity with the parallel action of <u>Parra v. Bashas',
Inc.</u>, No. Civ 02-0591 ("<u>Parra</u>"), as well as the prior proceedings herein, and
especially  <u>E.E.O.C. v. Bashas', Inc.</u>, 2009 WL 1783437 (D. Ariz. June 18, 2009)
("<u>E.E.O.C. I</u>"), there is no need to repeat that entire history herein.

employees on the basis of national origin with respect to
wages and promotions.  To date, the EEOC has filed a
Commissioner's Charge ("Charge") of discrimination against
Bashas', as well as serving Bashas' with four administrative
subpoenas, and two Requests for Information ("RFI").  The May
28, 2008, subpoena is the subject of the EEOC's pending
"Order to Show Cause why an Administrative Subpoena Should
not be Enforced" (doc. 1).

On September 21, 2009, this court heard oral argument as
to that OSC and as to Bashas' related "Motion for Leave to
Conduct Limited Discovery" (doc. 10).  After carefully
considering all of the submissions, including exhibits
admitted during that hearing, the testimony of the witnesses,
Gregg Tucek, Bashas' in-house counsel, and Kristy L. Nied,
Bashas' Director of Communications, and argument of counsel,
the court rules as follows.

### *Summary of Arguments*

In seeking to have the court enforce the May 28th
subpoena, the EEOC first asserts that because Bashas' did not
timely file a petition to revoke or modify that subpoena,
Bashas' has not exhausted its administrative remedies.  The
EEOC thus reasons that, except for constitutional challenges,
Bashas' has waived all objections to enforcement of that
subpoena.  Even if Bashas' is not deemed to have waived its
objections, the EEOC asserts that Bashas' has "no valid
defenses" for not complying with that subpoena.  Memo. (doc.
2) at 6:15-16.  Thus, the court should enter an order
directing Bashas' to respond to the May 28, 2008 subpoena.

Bashas' retorts that it has "preserved its right to challenge this subpoena" by, *inter alia*, providing detailed objections by June 13, 2008 -- the production date specified on the subpoena. Resp. (Doc. 25) at 5 (emphasis omitted). Turning to the merits, Bashas' asserts that this subpoena was not issued for a legitimate purpose, and hence the court should not enforce it. Bashas' seeks leave to conduct limited discovery to substantiate that argument.

Additionally, Bashas' asserts that the court should not enforce the subpoena because the Charge does not provide it with adequate notice as to the nature of the allegations. Although it recognizes the broad definition of relevancy in this context, Bashas' implicitly argues that the court should deny enforcement of the May 28th subpoena because the information which the EEOC is seeking therein is "completely irrelevant." Resp. (doc. 25) at 12 (emphasis omitted). Alternatively, if the court does enforce the subpoena, Bashas' "requests that the Court narrow [the] overbroad requests" therein and enter a confidentiality order "to prevent improper disclosure of Bashas' confidential employee information." Id. at 16:16-17.

The court will first address the EEOC's waiver argument. The court will proceed in this way because if it finds that Bashas' has waived its objections to the subpoena, such a waiver would include Bashas' objection on abuse of process grounds. Thus, a finding of waiver here would render moot Bashas' discovery motion. Only if the court is convinced that Bashas' has not waived its right to challenge the

subpoena on abuse of process grounds, will it consider whether to allow Bashas' to proceed with limited discovery.

### *Discussion*

### *I. Waiver*[2]

### *Factual Background*

The challenged subpoena directed Bashas' to mail to the EEOC "on June 13, 2008 at 4:00 o'clock[,]" compact disks containing a vast range of employee data, such as compensation details, ethnicity and union eligibility. Manget Aff. (doc. 2-2) at 3, ¶ 14; and attach. 7 thereto at 39. Nowhere on the face of that subpoena is there any mention of the five day time frame, discussed below, for

---

[2] As outlined in <u>E.E.O.C. I</u>, slightly more than eight weeks after this court denied the <u>Parra</u> plaintiffs' motion for reconsideration on the issue of certifying a class as to the pay claim, on May 26, 2006, the EEOC served an administrative subpoena upon Bashas'. One of the bases for Bashas' objection to that subpoena was that the EEOC had closed the individual charges in <u>Parra</u> more than four years prior to the issuance of that subpoena. <u>E.E.O.C. I</u>, 2009 WL 1783437, at *2. The EEOC did not respond to any of Bashas' objections; nor did it move to enforce that May 2006 subpoena. <u>Id.</u> Seemingly, the EEOC's response was to "re-open[] the charges as to the eight individuals who had filed EEOC charges against Bashas' in 2002, including plaintiffs Parra and Estrada." <u>Id.</u> (citations omitted); <u>see also</u> Mot. (doc. 10), exh. E thereto. Bashas' objected to that re-opening as well, but again, the EEOC never responded or moved to enforce the May 2006 subpoena. Quincy Decl'n (doc. 10-3) at 17, ¶ 8:8-9.

Partially based upon the foregoing, it appears to the court that Bashas' is raising the specter that the EEOC may not have the power to issue a subpoena once a charging party, such as Jose Parra, institutes litigation based upon that charge. Fairly recently, however, in <u>E.E.O.C. v. Fed. Express Corp.</u>, 558 F.2d 842 (9th Cir. 2009), <u>petition</u> <u>for</u> <u>cert.</u> <u>filed</u>, 77 U.S.L.W. 3680 (Jun 01, 2009) (No. 08-1500), the Ninth Circuit held that the EEOC "retains its authority to issue an administrative subpoena against an employer even after the charging party has been issued a right-to-sue notice and instituted a private action based upon that charge. <u>Id.</u> at 854. <u>Federal Express</u> thus forecloses Bashas' suggestion that because the EEOC closed the <u>Parra</u> charges and then "re-opened" them, the EEOC lacks the authority to issue an administrative subpoena such as the one at issue herein. Of course, in <u>Federal Express</u> the Ninth Circuit expressly left open the issue "whether the EEOC [later] may be barred from bringing a subsequent lawsuit based upon the [original] charge[.]" <u>Id.</u> Declining to address that issue, the <u>Federal Express</u> Court found that it was "simply irrelevant to whether the EEOC could issue an administrative subpoena based upon that charge[]" in the first place. <u>Id.</u> In light of the foregoing, the court finds that the EEOC had the authority to issue the May 28, 2008 subpoena, despite having previously closed and then re-opened the charges as to some of the <u>Parra</u> plaintiffs.

filing a petition to revoke or modify that subpoena.  The
only legal authority which that subpoena references is Title
VII, 42 U.S.C. § 2000e-9.  The May 28th subpoena indicates
that it is being "issued pursuant" to that statute.  _Id._,
attach. 7 thereto at 39.  "That subpoena was served upon
Bashas' by certified mail the next day, May 29, 2008."
_E.E.O.C. I_, 2009 WL 1783437, at *3 (citations and footnote
omitted).

On the directed production date - June 13th - nearly eight
months prior to the filing of this action, Bashas' "asserted
its objections to the subpoena, citing relevant authorities,
and reiterat[ing] its prior objections and concerns to this
request for information."  Mot. (doc. 10), exh. F thereto at
19, ¶ 16:6-7.  Those objections took the form of a letter to
Chester V. Bailey, EEOC Phoenix District Director, and
Charles J. Rahill, the EEOC investigator to whom the
subpoenaed documents were to be produced.  Doc. 25-3 at 103.

For almost eight months the EEOC did nothing.  The EEOC
never contacted Bashas', for example, to inform Bashas' that
because it had not timely filed a petition to revoke or
modify the May 28th subpoena, it failed to exhaust its
administrative remedies.  Similarly, the EEOC never advised
Bashas' that failing to exhaust, from the EEOC's standpoint,
would constitute a waiver of any objections Bashas' may have
to the subpoena.  Nor, in the following months, did the EEOC
ever respond to any of the objections detailed in Bashas'
June 13, 2008 letter.  Instead, on February 2, 2009, the same
day this court denied post-April 2004 pay data discovery in

Parra, the EEOC filed the pending OSC to enforce the May 28, 2008, subpoena.

***Analysis***

The EEOC is taking the position, as noted at the outset, that because Bashas' has not exhausted its administrative remedies, it has "waived *all* objections to enforcement of th[at] subpoena." OSC Memo. (doc. 2) at 5 (emphasis added). Implicit in that broad assertion is that by failing to exhaust its administrative remedies, Bashas' has waived its right to object to the subpoena on abuse of process grounds; concomitantly Bashas' is not entitled to conduct limited discovery on that issue.

To support its waiver argument, the EEOC relies upon 29 U.S.C. § 161, which states in relevant part:

> ***Within five days after the service of a subpena*** [sic] on any person requiring the production of any evidence in his possession or under his control, such person ***may petition*** the Board ***to revoke***, and the Board shall revoke, such subpena [sic] if in its opinion the ***evidence*** whose production is required does ***not relate*** to any matter under investigation, or any matter in question in such proceedings, ***or*** if in its opinion such ***subpena*** [sic] ***does not describe with sufficient particularity*** the evidence whose production is required.

29 U.S.C. § 161 (1) (emphasis added). The EEOC further relies upon 29 C.F.R. § 1601.16(b)(1), which states in relevant part:

> Any person served with a subpoena who intends not to comply ***shall petition*** the issuing Director or petition the General Counsel, if the subpoena is issued by a Commissioner, ***to seek its revocation or modification***. ***Petitions must be mailed*** to the Director or General Counsel, as appropriate, ***within***

- 6 -

> **five days** (excluding Saturdays, Sundays and
> Federal legal holidays) **after service** of
> the subpoena.

29 C.F.R. § 1601(b)(1) (emphasis added).  Disregarding the inconsistency between the permissive statutory language and the mandatory language of the regulation, the EEOC contends that Bashas' failure to petition to revoke or modify the subpoena within five days of service (*i.e.*, June 5, 2008), precludes Bashas' from challenging that subpoena except on constitutional grounds.

Bashas' counters by accurately pointing out that the regulation's mandatory language is at odds with the statute's permissive language.  Based upon that distinction, Bashas' asserts that "*many* courts have held that the exhaustion requirements of th[at] regulation [29 C.F.R. § 1601.16(b)(1)] are not binding on respondents."  Resp. (doc. 25) at 6 (emphasis added).  Due to the paucity of relevant case law, this is an overstatement.

Nonetheless, to support that broad assertion, Bashas' cites to, but does not discuss, <u>E.E.O.C. v. Lutheran Social Services</u>, 186 F.3d 959 (D.C.Cir. 1999).  There, the D.C. Circuit held that an employer who did not file a section 1601.16(b)(1) petition did not waive its right to object to an EEOC subpoena on attorney-client and work doctrine privilege grounds.  <u>E.E.O.C. v. WinCo Foods, Inc.</u>, 2006 U.S. Dist. LEXIS 74521 (E.D.Cal. 2006), however, and not <u>Lutheran Services</u>, is the cornerstone of Bashas' argument that despite not filing a section 1601.16(b)(1) petition, it has not waived its right to object to the May 28th subpoena.

Bashas' was not alone in giving relatively short shrift to <u>Lutheran Social Services</u>. Narrowly focusing on the nature of the employer's objections in <u>Lutheran Services</u>, the EEOC contends that <u>Lutheran</u> is inapplicable here. Although the parties did not deem <u>Lutheran Services</u> worthy of any meaningful discussion or analysis, the court does. <u>Lutheran Services</u> warrants fairly close examination because: (1) it is the seminal wavier case; (2) the <u>WinCo</u> court adopted that reasoning; and (3) <u>Lutheran Services</u> and <u>WinCo</u> are strikingly similar to the present case.

Additionally, <u>Lutheran Services</u> is noteworthy because that Court held that compliance with 29 C.F.R. § 1601.16(b)(1) is not a jurisdictional prerequisite, as the EEOC conceded therein. <u>Lutheran Services</u>, 186 F.3d at 962. The <u>WinCo</u> court,[3] as does this court, found <u>Lutheran Services</u> persuasive on that point. Compliance with that regulation is not jurisdictional, the D.C. Circuit explained, because "[e]xhaustion is a jurisdictional prerequisite . . . [o]nly when Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." <u>Id.</u> (internal quotation marks and citation omitted). Title VII lacks those "clear, unequivocal terms," as the <u>Lutheran Services</u> Court explained. Title VII, which "confers on the EEOC the same subpoena authority the National Labor Relations Act gives to the National Labor Relations Board[,]" provides "only that

---

[3] <u>WinCo</u> is the only case within the Ninth Circuit of which the court is aware addressing the issue of whether section 1601.16(b)(1) is jurisdictional.

parties 'may petition the [Commission] to revoke' a subpoena
on the basis of relevance and particularity; nowhere does [29
U.S.C. § 161(1)] even imply, much less expressly state, that
courts lack jurisdiction to hear objections not presented to
the [EEOC]." Id. at 962 and 963 (citations omitted) (emphasis
added). Therefore, despite the mandatory language of the
regulation, nothing in the governing authorizing statute
unequivocally states that exhaustion is a jurisdictional
prerequisite. Thus, in accordance with Lutheran Services and
WinCo, this court finds that Bashas' failure to comply with 29
C.F.R. § 1601.16(b)(1) does not deprive this court of
jurisdiction to consider Bashas' objections.

Although the Lutheran Services Court held that section
1601.16(b)(1) did not deprive the court of jurisdiction to
consider the employer's objections to the EEOC's subpoena, it
did recognize the discretionary nature of exhaustion
thereunder. In other words, "courts may exercise their
authority to hear issues not presented to the agency if the
circumstances surrounding noncompliance with agency procedures
are sufficiently compelling." Id. at 963 (internal quotation
marks and citations omitted). This means that "'the
exhaustion requirement continues to apply as a matter of
judicial discretion[,]'" as opposed to a mandatory
jurisdictional doctrine, "'in cases not governed by the APA
[Administrative Procedure Act].'" Lutheran Services, 186 F.3d
at 963 (quoting Darby v. Cisneros, 509 U.S. 137, 153-54, 113
S.Ct. 2539, 125 L.Ed.2d 113 (1993)) (emphasis added by
Lutheran Services Court). Simply put: "Where Congress

specifically mandates, exhaustion is required. But where
Congress has not clearly required exhaustion, sound judicial
discretion governs." McCarthy v. Madigan, 503 U.S. 140, 144,
112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

Invoking those well-settled principles, the Lutheran
Services Court held that the "mandatory language" of section
1601.16(b)(1) "creates a strong presumption that issues
parties fail to present to the agency will not be heard in
court." Lutheran Services, 186 F.3d at 964 (citation
omitted). At the same time, though, the D.C. Circuit found
that there was "no categorical bar prevent[ing] [it] from
considering whether the facts surrounding Lutheran's failure
to file a section 1601.16(b)(1) petition constitutes
circumstances sufficiently extraordinary to defeat this
presumption[.]" Id.

For three reasons, the Lutheran Services Court excused the
employer's failure to file a § 1601.16(b)(1) petition
objecting to the EEOC's subpoena. First, the form subpoena at
issue therein did not "stat[e] that a subpoena recipient has
five days to object or even point[] the recipient to section
1601.16(b)(1)[.]" Id. That subpoena stated "only that it 'is
issued pursuant [to] (Title VII) 42 U.S.C. § 2000e-9.'" Id.
The Court persuasively reasoned that "[n]othing on the face of
the subpoena or in the statutes to which it referred would
have led [Lutheran] . . . to believe that [it] *must* petition
the EEOC within five days, particularly given that Lutheran's
objection rested not on relevance or particularity, but on the
attorney-client and work product privileges." Id. (citation

omitted).  Relevancy and lack of particularity are the two grounds which 29 C.F.R. § 1601.16(b)(1) identifies as bases for filing a petition to revoke.

The second reason for excusing timely filing of a § 1601.16(b)(1) petition in Lutheran Services was that the EEOC investigator "seem[ed] to have been unaware" of Lutheran's "obligation" under that regulation.  Id. at 965.  That seeming unawareness arose from the fact that the EEOC investigator "never said, 'Sorry, you're too late.  29 C.F.R. § 1601.16(b)(1) requires your client to have filed a petition with the District Director within five days of receiving the subpoena.]'" Id.  Instead, according to Lutheran's counsel, the investigator took a more conciliatory approach, "agree[ing] to 'keep [the lawyer] posted on the EEOC's decision and to contact [the lawyer] before taking further action.'" Id. (citation omitted).  It was "[n]ot until the EEOC filed th[at] enforcement action [that] . . . [the EEOC] mention[ed] section 1601.16(b)(1)." Id.

The Lutheran Services Court also found it significant that Lutheran had "repeatedly claimed the [subpoenaed] document to be privileged." Id. 186 F.3d at 965 (citation omitted).  Not only that, "the EEOC official with whom the regulation required Lutheran to file its petition, . . . , was aware of the nature of Lutheran's objections." Id.

Importantly, the Court in Lutheran Services further explained that its holding "would do little if any damage to the integrity of the Commission's section 1601.16(b)(1) procedures." 186 F.3d at 965.  The Court recited the well-

settled tenet that "[t]he basic purpose of the exhaustion
doctrine is to allow an administrative agency to perform
functions within its special competence." Id. (internal
quotation marks and citations omitted). "No such benefit
would flow from requiring exhaustion[,]" the Lutheran Services
Court found, because "the EEOC has no expertise with respect
to the attorney-client and work product privileges." Id.
Such expertise "resides in the federal courts." Id. (citation
omitted). Consequently, the Court noted that "even if
Lutheran had filed a section 1601.16(b)(1) petition, [it]
would not defer to the EEOC's disposition of Lutheran's
privilege claims." Id. (citations omitted). Declining to
defer to agency expertise made Lutheran Services "quite
different from the more typical situation where a subpoena
recipient's objections rest on relevancy or particularity, the
two factors listed in 29 U.S.C. § 161." Id.

Bolstering the Court's holding in Lutheran Services was
the "important role" that the attorney-client and work product
privileges "play . . . in Title VII's enforcement scheme[,]"
along with the fact that "rejecting the [EEOC's] waiver claim
w[ould] not deny it access to any sources of possible evidence
of discrimination." Id. at 966. "[U]nder th[os]e combined
circumstances," the D.C. Circuit found that it would be "both
unfair and unwise to penalize Lutheran for failing to file a
section 1601.16(b)(1) petition." Id. at 966-967.
Accordingly, it did not deem "Lutheran's failure to file a
section 1601.16(b)(1) petition as a waiver of its privilege
claim." Id. at 965.

As in _Lutheran Services_, the issue here is "whether the facts surrounding [Bashas'] failure to file a section 1601.16(b)(1) petition constitute circumstances sufficiently extraordinary to defeat" the presumption that the court should not consider issues which Bashas' did not present to the EEOC. _See id._ Stated differently, the court must consider whether "the circumstances surrounding [Bashas'] noncompliance with [EEOC] procedures are sufficiently compelling[]" so that, in the exercise of its discretion, the court may consider those issues. _See id._ at 963 (internal quotation marks and citations omitted). The remarkable similarities, set forth below, between _Lutheran Services_ and the present case, persuade this court that Bashas' has preserved its right to challenge the May 28, 2008 subpoena, regardless of its failure to file a § 1601.16(b)(1) petition.

Significantly, the _Lutheran Services_ subpoena, which is an appendix to that decision, is identical to the subpoena which the EEOC issued to Bashas'. And, just like the _Lutheran Services_ subpoena, the subpoena to Bashas' merely stated that it was issued "pursuant . . . (Title VII) 42 U.S.C. 2000e-9[.]" Manget Aff. (doc. 2-2), attach. 7 thereto at 39. There is nothing on its face which would have led Bashas' to believe that it had only five days to petition to revoke or modify that subpoena.

Evidently the EEOC is attempting to distinguish _Lutheran Services_ on the basis that although the challenged subpoena did not mention the five day rule, Bashas' was "aware of [its] _ability_ to petition to revoke or modify the subpoena because

- 13 -

[she] had previously attempted to do so on behalf of [Bashas']
in Jose Parra's charge." Reply (doc. 28) at 4, n. 3 (citation
omitted)(emphasis added). The flaw with that reasoning is
that Bashas' awareness of its *ability* to file a petition is
fundamentally different than its awareness of the *time frame*
in which to do so.

Bashas' May 25, 2006 petition to revoke the EEOC's May 11,
2006 subpoena, to which the EEOC points, shows Bashas'
awareness of its ability to petition to revoke; but, that
petition does not show Bashas' awareness of the five day time
frame. Apparently Bashas' received the May 11th subpoena on
May 15th, but its petition to revoke is dated May 25th, and
evidently faxed to the EEOC that same date. Doc. 25-3 at 75-
76; and 78. Bashas' petition to revoke thus was not mailed
within five days after service of the May 11th subpoena, as
section 1601.16(b)(1) mandates. Perhaps that is because, like
the other EEOC subpoenas before this court, the May 11th
subpoena did not specify the five day time frame, or the
statutory or regulatory basis for that requirement.

Interestingly, Bashas' concluded its May 25, 2006 petition
by requesting to be "advise[d]" if the EEOC "believe[d] [that]
for some reason . . . [Bashas'] . . . overlooked a relevant
fact or *legal authority*[.]" Id. at 82 (emphasis added).
Despite that explicit request, the EEOC never advised Bashas'
that that petition was not timely. In fact, the EEOC did not
directly respond to that petition, and it never filed an
action to enforce the May 11, 2006 subpoena. Thus, the court
disagrees with the EEOC's suggestion that the timing of

Bashas' prior petition to revoke supports a finding that Bashas' was aware of the five day rule. Obviously the court also does not agree that Bashas' awareness of its ability to file such a petition is an adequate basis for distinguishing Lutheran Services.

In addition to serving subpoenas which did not notify the recipients of the five day rule, Lutheran Services and the present case are alike in that seemingly the EEOC investigators in both were unaware of the recipients' section 1601.16(b)(1) obligations. As in Lutheran Services, the EEOC never informed Bashas' that its June 13, 2008 response was too late. Moreover, as just explained, here, the EEOC also never advised Bashas' of its failure to comply with the five day rule even when in May 2006 Bashas' filed a petition to revoke pursuant to section 1601.16(b)(1).

The EEOC's failure to mention section 1601.16(b)(1) becomes even more problematic given that between May 2006 and May 2008, the EEOC served Bashas' with four subpoenas, including the one at issue herein. None of those subpoenas advised Bashas' of the five day time frame, or the consequences of failing to comply therewith. In fact, as to Bashas' response to the two July 27, 2007 subpoenas, completely disregarding the timing issue, the EEOC addressed the merits in some detail, finding that response "inadequate." Id., attach. 5 thereto at 30.

The bottom line here, which the EEOC cannot refute, is that Bashas' timely responded to the only deadline in the subpoena - June 13, 2008. At any point in the process, it

would not have been difficult for the EEOC to have advised Bashas' of the section 1601.16(b)(1)'s requirements, but it did not.  Intentional or not, the effect of the EEOC's silence was to lead Bashas' into a false sense of security as to the necessity of timely filing a petition to revoke or modify. The court will not countenance such behavior.  After all, at least since 1999, when the D.C. Circuit wisely suggested a simple addition to the EEOC's form subpoena,[4] the EEOC has been well aware of the risks inherent in continuing to use a subpoena which does not notify the recipient of section 1601.16(b)(1)'s time frame.

     Moreover, as in Lutheran Services, in this case the EEOC did not mention the five day time frame until the February 2, 2009, filing of its application for an OSC.  Even then, the supporting affidavit only avers that Bashas' "has not filed a Petition to Revoke or Modify the Subpoena, and the five-day period for filing such a petition with respect to a Title VII subpoena has expired."  Id. at 4, ¶ 18.  In making that averment, EEOC Enforcement Manager Manget does not cite to any

---

[4]     In Lutheran Services, the Court pointedly observed:

        [I]f the [EEOC] wishes to ensure (regardless
        of the actions of its General Counsel) that
        it has an opportunity to review all subpoena
        enforcement issues before they get to court,
        it can easily do so by adding to the face of the
        subpoena, which already contains a "Notice to
        Person Subpoenaed," something like the following:

        If you have any objections to this subpoena,
        you must include them in a petition filed with
        the issuing official pursuant to 29 C.F.R.
        § 1601.16(b)(1). Petitions must be mailed
        within five days of receiving this subpoena.
        Failure to follow these regulations may result
        in loss of any ability to raise such objections in court.

Lutheran Services, 186 F.3d at 966-67 (citation omitted).

- 16 -

statute or regulation.

Finally, as earlier alluded to, like <u>Lutheran Services</u>, Bashas' has repeatedly and continually made its objections known to the EEOC. Those objections included not only relevancy and overbreadth, but abuse of process. In fact, at least as early as May 25, 2006, Bashas' informed the EEOC of its abuse of process argument.[5] That response, as well as Bashas' June 13, 2008, response to the challenged subpoena were both addressed, among others, to Chester V. Bailey who issued the May 28, 2008 subpoena. Thus, although Bashas' did not timely file a petition to modify or revoke in accordance with § 1601.16(b)(1), its response to the challenged subpoena, which is dated June 13, 2008 - the production date directed in the subpoena - put Mr. Bailey, the "issuing Director," on notice of Bashas' objections, which surely is the underlying intent of that regulation. Indeed, during the hearing the EEOC agreed with the court's observation that as a practical matter it has known of Bashas' objections for months prior to the filing of this action. It thus strikes the court that this is a classic example of the sporting maxim, "No harm, no foul."

<u>WinCo</u> upon which Bashas' predominately relies to refute Bashas' waiver argument provides further support for the court's conclusion that Bashas' has not waived its right to object to the EEOC subpoena at issue herein. Applying the <u>Lutheran Services</u> analysis, the court excused WinCo from filing its objections within five days of service of an EEOC

---

[5]     <u>See</u> Doc. 25-3 at 81-82.

subpoena.  The essential facts of <u>WinCo</u> are practically
identical to those here, as well as to those in <u>Lutheran</u>
<u>Services</u>.  In all three cases, the EEOC subpoena did not
notify the recipient of the five day rule.  Nor did the EEOC
notify any of those recipients, after they served their
objections, that there was "any compliance issue or failure to
exhaust."  <u>See</u> <u>WinCo</u>, 2006 U.S.Dist. LEXIS 75421, at *12
(internal quotation marks and citations omitted).  WinCo, as
did Bashas' also "consistently objected, . . . , to EEOC's
information requests and WinCo's formal written objections to
the challenged subpoena[.]"  <u>Id.</u>  Further, the subpoena
recipients served responses "to the subpoenas on the date for
which production was demanded, long before the filing of
th[o]s[e] enforcement action[s]."  <u>See</u> <u>id.</u>

     Given that the <u>WinCo</u> facts were "analogous" to those in
<u>Lutheran Services</u>, and that "the balance of factors weigh[ed]
strongly in WinCo's favor[,]" the court found WinCo did not
waive its objections to the challenged EEOC subpoena.  <u>Id.</u>
Furthermore, the <u>WinCo</u> court convincingly distinguished the
line of cases to which the EEOC cites in its memorandum on the
basis that none of them[6] "involved defendants who lodged
objections prior to the EEOC's filing of an enforcement
action[;]" and none "examine[d] the inconsistencies between 29
C.F.R. § 1601.16(b) and its authorizing statute, 29 U.S.C. §
161."  <u>Id.</u> at *13 (citations omitted).

---

     [6]     <u>See</u> <u>E.E.O.C.v. Cuzzens of Georgia</u>, 608 F.2d 1062 (5th Cir. 1979);
<u>E.E.O.C. v. City of Milwaukee</u>, 919 F.Supp.1247 (E.D.Wis. 1996); <u>E.E.O.C. v. County
of Hennepin</u>, 623 F.Supp. 29 (D.Minn. 1985); and <u>E.E.O.C. v. Roadway Express</u>, 569
F.Supp. 1526 (N.D.Ind. 1983)).

In any event, what is perhaps most significant about <u>WinCo</u> is that court adopted the <u>Lutheran Services</u> reasoning despite the fact that WinCo did not object on privilege grounds. Indeed, the <u>WinCo</u> court was presented with the "more typical situation" of objections based upon, *inter alia*, relevancy and lack of particularity – the two factors which 29 U.S.C. § 161 identifies  as grounds for petitioning for revocation of an EEOC subpoena.  Thus, the <u>WinCo</u> court did not take into account the basic purpose of exhaustion – deference to agency expertise, which was a critical underpinning of the Court's reasoning in <u>Lutheran Services</u>.

Tellingly, in its reply the EEOC did not mention <u>WinCo</u> at all.  Instead, the EEOC attempts to distinguish <u>Lutheran Services</u> and another case to which Bashas' cites, <u>E.E.O.C. v. Guess?, Inc.</u>, 176 F.Supp.2d 416, 422 (E.D.Pa. 2001), based on the nature of the objections – both involved claims of attorney client and work product privilege.  The EEOC stresses, in contrast, that "Bashas' position is that the information subpoenaed is not relevant and is overbroad[.] Reply (doc. 28) at 4.  The EEOC thus reasons that those objections are waived because "they are matters in which the EEOC has expertise."  <u>Id.</u>

<u>WinCo</u> disposes of this argument though.  As just stated, the <u>WinCo</u> court applied the <u>Lutheran Services</u> rationale even though WinCo objected to the EEOC subpoena on overbreadth and relevance grounds.  Moreover, in addition to overbreadth and relevance, Bashas' is objecting on abuse of process grounds. The significance of this particular objection is that, as with

the privilege objections in <u>Lutheran Services</u>, an abuse of process objection is "quite different from the more typical situation where a subpoena recipient's objections rest on relevancy or particularity, the two factors listed in 29 U.S.C. § 161." <u>See</u> 186 F.3d at 965. Abuse of process it not among the section 161 factors. Thus, concern over deference to agency expertise is not implicated here, at least as to Bashas' abuse of process objection. Indeed, understandably, it might be difficult for the EEOC to remain wholly objective if confronted with the abuse of process objection.

Additionally, it should be noted that in <u>City of Milwaukee</u>, one of the cases to which the EEOC cites, the court addressed the merits of the City's objections to an EEOC subpoena, despite a finding of waiver. That court candidly noted that "one might be tempted to order enforcement . . . without any further discussion or analysis," in light of the waiver. <u>City of Milwaukee</u>, 919 F.Supp. at 1255. "[D]eclin[ing] to succumb to that temptation[,]" the court soundly stated that "the parties and the public are entitled to a more thorough treatment of the issues presented" therein. The same can certainly be said here.

For all of these reasons, the court finds that the circumstances surrounding Bashas' failure to timely file a petition to revoke or modify the May 28, 2008 subpoena are "sufficiently extraordinary" to defeat the presumption that Bashas' has waived its right to object because it did not timely file such a petition. The court stresses that it is not adopting a *per se* rule that an abuse of process objection

or, for that matter, any objection other than the two set forth in 29 U.S.C. § 161 will automatically suffice to excuse timely filing of a section 1601.16(b)(1) petition.  Rather, primarily because of the somewhat unique facts of this case, including this court's extensive familiarity with the background of this action, resulting from the fact that it has presided over the related Parra action for more than seven years, the court finds that Bashas' has not waived its right to object to the May 28, 2008 subpoena, despite failing to file a § 1601.16(b)(1) petition.

Before turning to Bashas' discovery motion, it should be noted that in its Reply the EEOC cites to, but does not analyze, E.E.O.C. v. Sunoco, 2009 WL 197555 (E.D.Pa. 2009). Sunoco, on the face of it, might appear to compel a different result here.  There, the court found that Sunoco did waive its objections to enforcing an EEOC subpoena where it failed to timely file a petition to revoke or modify.  The court in Sunoco found that Lutheran Services was not "controlling" because of the nature of Sunoco's objections.  More specifically, Sunoco objected on the "ground that [it] ha[d] not been given fair notice of the existence and nature of any pending charge against it[.]" Id. at *4 (internal quotation marks and citation omitted).  The court found that objection to be "the more typical" situation recognized by the Lutheran Court.  Id.

As in Sunoco, Bashas' is making a lack of notice objection.  The EEOC overlooks the fact that, in sharp contrast to the present case, Sunoco did not object to the

1  EEOC's subpoena until 25 days after service.  On the other

2  hand, in the present action not only did Bashas' make its

3  objections to the subpoena on the same date as that

4  subpoena directed a response, but, for over a year before,

5  it had made nearly identical objections to substantially

6  similar EEOC Requests and two prior EEOC subpoenas.  That

7  critical distinction renders Sunoco inapplicable here.

8       In sum, despite the EEOC's contrary assertion, the

9  court finds that Bashas' did not waive its right to object

10 to the May 28, 2008 subpoena.  Therefore, the court will

11 next address Bashas' abuse of process objection, and more

12 particularly,  Bashas' motion for leave to conduct limited

13 discovery on that issue.

14 **II.  "Motion for Leave to Conduct Limited Discovery"**

15       Primarily because it could not "ignore the broader

16 context in which this particular dispute has arisen, and

17 the timing of this OSC[,]" in Parra I this court deemed it

18 necessary to conduct a hearing on Bashas' discovery

19 motion.  E.E.O.C. I, 2009 WL 1783437, at *11.  Before

20 considering the impact of that hearing on Bashas' motion,

21 the court will reiterate the parties' respective burdens.

22       **A.  Administrative Subpoena Enforcement Requirements**

23       The EEOC must satisfy four requirements to establish

24 its entitlement to enforcement of an administrative

25 subpoena by this court.  The EEOC must show:

26            [1] that the investigation will be conducted
             pursuant to a legitimate purpose, [2] that
27           the inquiry may be relevant to the purpose,
             [3] that the information sought is not already
28           within the [agency's] possession, and [4] that

the administrative steps required by the
[agency's statutes or rules] have been followed.

*E.E.O.C. I*, 2009 WL 1783437, at *6 (quoting, *inter alia*, *United States v. Powell*, 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)).  The sole basis for Bashas' discovery motion is that the EEOC is not conducting this particular investigation for a legitimate purpose.  Thus, from Bashas' perspective, enforcement of this subpoena would amount to an abuse of this court's process.  Likewise, in its response to the OSC (filed  after *E.E.O.C. I*), Bashas' continues to insist that this investigation is not being conducted for a legitimate purpose.  Hence, Bashas' maintains that the court also should deny enforcement on abuse of process grounds.  Interestingly, the EEOC did not address this issue until the hearing when it responded, in essence, that this investigation is being conducted for a legitimate purpose, *i.e.* to aid in determining whether Bashas' has engaged in discrimination against Hispanics.

### B.  Bashas' Burden of Proof

Bashas' may be allowed to engage in "'[a] limited amount of discovery . . . if, for example, [it] makes a *preliminary and substantial demonstration* of abuse[.]'" Id. (quoting Reich v. Montana Sulphur & Chemical Co., 32 F.3d 440, 449 (9th Cir. 1994) (internal quotation marks and citations omitted)).  This requires Bashas' to "'present[] meaningful evidence that the [EEOC] is attempting to abuse its investigative authority.'" Id. (quoting Reich, 32 F.3d

at 449 (internal quotation marks and citations omitted)).
Agreeing with Bashas', this court has previously found
that the "preliminary and substantial demonstration
standard does *not* mean actual proof." Id. (internal
quotation marks and citation omitted) (emphasis in
original). Still, Bashas' "needs to . . . develop facts
from which [this] court might *infer a possibility* of some
wrongful conduct" by the EEOC. Id. at *7 (internal
quotation marks and citation omitted) (emphasis in
original). The court has reviewed all of the record proof
with an acute awareness that Bashas' has a "relatively
heavy" burden to satisfy before even limited discovery
will be permitted here. See E.E.O.C. I, 2009 WL 1783437,
at *6 (internal quotation marks and citation omitted).

### C. Legitimacy of Purpose

As thoroughly discussed in E.E.O.C. I, Bashas' based
its claimed need for discovery upon three factors: (1) the
timing of the EEOC's investigation and this enforcement
action; (2) purported sharing of information between the
EEOC and the Parra attorneys and/or the United Food and
Commercial Workers' Union ("UFCW"); and (3) the EEOC's
alleged "improper ulterior motive" for issuing the Charge
and this subpoena. See id. at *7 (internal quotation
marks and citations omitted). In its response to the OSC
and during the hearing, Bashas' elaborated upon some of
those factors.

Bashas' views this enforcement action as nothing more
than "[a] course of conduct" by the EEOC "intended to

harass . . . and to pressure" it with respect to the _Parra_
litigation and UFCW unionization efforts.  Resp. (doc. 25)
at 11:5-6.  To support this view, Bashas' notes that
during the past eight years the EEOC has periodically
conducted "'investigations'" of Bashas' either through
individual charges or this Charge; yet, to date, the EEOC
has found no violations.  _Id._ at 9:25-27.  In terms of
the interplay between this enforcement action and _Parra_,
from Bashas' perspective, those "investigations" and the
"various subpoenas" which the EEOC has directed to
Bashas', have "not so coincidentally coincided with set
backs in the _Parra_ litigation and parallel the UFCW's . .
. union campaign against" it.  _Id._ at 10:27-11:1 (citation
omitted).

     Bashas' attempted to cast further doubt on the EEOC's
motives in pursuing this enforcement action by noting at
the hearing that it recently filed a Chapter 11 Bankruptcy
Petition.  Bashas' "believes" that a "large part of the
reason" the EEOC continues to pursue this action is
because it can "evade the bankruptcy court[,]" unlike
_Parra_, which as a result of Bashas' bankruptcy, is now
subject to a stay. Audio Tr. (Sept. 21, 2009) at 10:04
a.m.

     The EEOC maintains that the Charge and the subpoena at
issue are part of its investigative authority to determine
whether Bashas' has engaged in discriminatory conduct.
This view would be much easier to embrace if it were not
for several factors, such as the striking similarity

between Parra and this action.  The present Charge is
"from at least May 2004," whereas at least as to the pay
claim, April 2004 is the cut-off date in the Parra action.
Manget Aff. (doc. 2-2), attach. 1 thereto.  Other than
that, this Charge is practically indistinguishable from
the allegations in Parra.  Also, there is the fact that
for some inexplicable reason, the EEOC did not intervene
in Parra.

Moreover, as highlighted below, the EEOC has not been
continuously and actively pursuing this investigation.
Ordinarily the EEOC would have the prerogative to decide
at what pace and how vigorously to pursue a given
investigation, and it would be of little or no consequence
to the court.  Under the unique circumstances of this
case, however, and taking into account the extremely close
link between this action and Parra, the court cannot
disregard the manner in which the EEOC has conducted this
investigation.  For months at a time the EEOC allowed this
investigation to lay dormant.  Then, when the Parra
plaintiffs have sustained a setback, seemingly the EEOC
has a renewed interest in pursuing this investigation.

With the advantage of full briefing on the OSC and the
recent hearing, the court finds that Bashas' has made the
requisite showing so as to justify limited discovery.  The
primary basis for this finding is timing - not just the
timing of the OSC vis-a-vis this court's February, 2, 2009
ruling precluding discovery, but the timing of this EEOC
investigation more generally.  The timing of the EEOC's

actions which eventually resulted in the filing of this OSC take on even greater import when viewed in conjunction with the Parra action. Motive, too, is a consideration in this court's finding that Bashas' may proceed with limited discovery. The EEOC's motives for filing this Charge and enforcement action become questionable when, again, they are viewed in the larger context of Parra and the UFCW's unionization efforts aimed at Bashas'.

Turning first to the Charge, both its timing and its content raise concerns as to the EEOC's underlying purpose and motive. The Charge is dated May 9, 2007, which, Mr. Tucek testified, was at the "height of the UFCW's campaign against Bashas[.]" Audio Tr. (Sept. 21, 2009) at 10:18:23-10:18:29 a.m. Of equal if not more import is the content of that Charge. Not only does it substantially mirror the Parra allegations, but it seems that its scope was largely attributable to the Parra's April, 2004 time limitation on discovery of Bashas' wage data.

During the hearing, the EEOC candidly admitted that it "certainly does not operate totally in a vacuum." Id. at 1:57 - 2:00 p.m. As an agency, it is "aware" of other cases that are being litigated. Id. at 2:00:32 p.m. Potentially significant here is the EEOC's indication that it communicates with other plaintiffs' counsel. As the EEOC describes it, it is "in touch with what is going on in the litigation field." Id. at 2:02 p.m. So, "if the Commissioner has an interest in an area" that is "being litigated[,]" the EEOC "will often field questions[.]"

<u>Id.</u> 2:02:25-34. Moreover, although the EEOC vehemently denies that it publicly discusses a charge prior to its filing, it readily conceded that the existence of EEOC charges may become known in the community through witnesses, intervening charging parties, or the respondents themselves. <u>See id.</u> at 2:05:42-2:06:00 p.m. Given this undoubtedly realistic depiction of how the EEOC operates, it stands to reason that the EEOC could not assure the court that the temporal scope of discovery in <u>Parra</u> "did <u>not</u> have an effect on the time periods" set forth in the Charge. <u>Id.</u> at 2:00:53-2:01:15 p.m. (emphasis added).

Shifting to the OSC, the court remains skeptical, despite the EEOC's repeated assurances, that it is simply coincidental that on February 2, 2009 - "the same day this court denied discovery in <u>Parra</u> as to Bashas' post-April 2004 pay policy, the EEOC decided to file an OSC to enforce a subpoena encompassing such pay data, a subpoena which had been served over eight months earlier." <u>See</u> <u>E.E.O.C. I</u>, 2009 WL 1783437, at *7. This skepticism stems, in part, from the EEOC's candid responses to the court's inquiries during the hearing.

As the EEOC explained it, the trial attorney responsible for drafting this OSC completed it in October, 2008. Audio Tr. (Sept. 21, 2009) at 2:03:14 p.m. After that, the OSC remained in the office of the supervisory trial attorney for a "long time[.]" <u>Id.</u> at 2:03:15-26 p.m. Based upon the foregoing, the EEOC insists that the

February 2, 2009 filing of this OSC "really" was just a "coincidence[.]"  Id.  at 2:03:27 p.m.

Querying the EEOC, it readily acknowledged the court's concern, but stressed that as an agency it would not delay the filing of a court document.  Id. at 2:03:34-37 p.m. The EEOC strongly suggests that the "coincidental" timing of the filing of the OSC came about because of the EEOC's workload priorities.  Litigation takes precedence over subpoena enforcement matters, so there is "often a long lapse" between the issuance of a subpoena and its enforcement.  Id. at 2:03:43-46 p.m.

While the EEOC's explanation is plausible, like the EEOC, this court does not operate in a vacuum.  It, too, must take into account "the broader context[.]" See E.E.O.C. I, 2009 WL 1783437, at *11.  When the court does that, the fact that, with the exception of a supervisor's review, the OSC was complete in October, 2008, undermines the EEOC's position.  If the OSC was essentially complete, it strikes the court as odd that the EEOC would not have filed this action sooner, especially if, as it professes, it has an interest in eradicating workplace discrimination.

The delay also cannot be justified based upon the content of the OSC.  The OSC itself is three pages of boilerplate language.  The supporting affidavit is similarly terse and does not include voluminous exhibits. Lastly, the EEOC's memorandum of law also is rather cursory.  Thus, it strains credulity that even with

limited institutional resources, this particular OSC could not have been reviewed and filed until eight months after service of the subpoena.

Apart from the OSC, the issue of timing continues to be "troublesome" because the EEOC never sought to enforce the three preceding subpoenas. See E.E.O.C. I, 2009 WL 1783437, at *8. The first subpoena, in the matter of eight individuals including plaintiffs Parra and Estrada, is dated May 11, 2006, slightly more than eight weeks after this court denied the Parra plaintiffs' motion for reconsideration on the issue of certifying a class as to the pay claim. That timing alone is curious. Furthermore, the EEOC never responded to Bashas' petition to revoke that subpoena. In that petition, among other grounds, Bashas' asserted that the May 2006 subpoena was based upon the improper re-opening of the Parra and Estrada charges. See Doc. 25-3 at 79-81. Instead of responding to that petition, the EEOC "re-opened" the charges of those individuals, which it had closed in 2002 after the filing of Parra.

Lastly, the court is well aware that the EEOC denies that there is anything improper in its having communication with third-parties. Audio Tr. (Sept. 21, 2009) at 2:2:54-2:03:07 p.m. Assuming, as the EEOC assured the court, that it abides by its confidential obligations, in the abstract the court would agree that such communications are not improper. The court is not concerned with some theoretical communication between the

EEOC and third-parties, however.  Here, the concern arises
because on this record the court can "*infer a possibility*
of some wrongful conduct" by the EEOC in terms of its
outside communications and motives.  <u>E.E.O.C. I</u>, 2009 WL
1783437, at *7 (internal quotation marks and citation
omitted) (emphasis in original).  For that reason, among
others, limited discovery is needed here.  After the
completion of discovery, it may be that the court finds
that the EEOC has acted with a legitimate purpose in
filing this Charge and enforcement action.  That
determination cannot be made in a factual vacuum, however.

     To conclude, in <u>E.E.O.C. I</u> this court found that,
"*without more*, . . . timing was not a sufficient basis for
allowing . . . discovery."  <u>Id.</u> at *8 (emphasis added).
Now, however, the timing factor tips decidedly in favor of
allowing Bashas' to conduct limited discovery.  Likewise,
the motive factor also augurs in favor of allowing such
discovery.  That is so because on the record as presently
constituted, Bashas' has made "a *preliminary and
substantial demonstration* of abuse[]" so as to justify
limited discovery on the issue of whether the EEOC has
filed this Charge and enforcement action for a legitimate
purpose.  <u>See</u> <u>id.</u> at *6 (internal quotation marks and
citation omitted) (emphasis in original).  Although not
determinative, the court has taken into account, as
Bashas' put it, the "reality" under which it is
"operating" in that currently it has access to a "limited
amount of evidence[.]" Audio Tr. (Sept. 21, 2009) at

1  10:04:23-29 a.m.  Bashas' ability to conduct such

2  discovery will be fairly circumscribed, however, as set

3  forth in the next section.

4      ### D.  *Sufficiency of Notice*

5      Before delineating the scope of discovery, the court

6  recognizes that Bashas' also contends that this court

7  lacks jurisdiction to enforce the May 28, 2008 subpoena

8  because the Charge does not provide Bashas' with

9  sufficient notice of the allegations against it.  This

10  argument need not detain the court for long.

11      In E.E.O.C. v. Shell Oil Co., 466 U.S. 54, 104 S.Ct.

12  1621, 80 L.Ed.2d 41 (1984), the Court held that an EEOC

13  charge must meet the requirements of 42 U.S.C. § 2000e-

14  5(b), which "is a jurisdictional prerequisite to judicial

15  enforcement of a subpoena issued by the EEOC."  Id. at 65

16  (footnote omitted).  The court adopted the following

17  standard in the "pattern-and practice" context:[7]

18              *Insofar as he is able*, the Commissioner
            should identify the groups of persons that
19            he has reason to believe have been
            discriminated against, the categories of
20            employment positions from which they have
            been excluded, the methods by which the
21            discrimination may have been effected, and
            the periods of time in which he suspects
22            the discrimination to have been practiced.

23  Id. at 73 (emphasis added).  Especially given the

24  prefatory phrase, "[i]nsofar as he is able," that standard

25

26      ───────────────

27        [7]    The Charge itself does not allege a "pattern and practice" of
        discrimination by Bashas', but that is a reasonable construction.  And, evidently
        that is how Bashas' is construing the Charge as it invokes the Shell Oil standard,
        which expressly applies to pattern and practice allegations.  Moreover, the EEOC

28  has not disputed that characterization or Bashas' reliance upon that standard.
        Accordingly, for now, the court will adopt construction which the EEOC advances and
        apply the Shell Oil standard.

                                    - 32 -

1  is fairly lenient by any measure.

2      The Commissioner's Charge against Bashas' satisfies
3  that standard.  It identifies "Hispanics" as the "group of
4  persons" the Commissioner "has reason to believe have been
5  discriminated against."  See Manget Aff. (doc. 2-2),
6  attach. 1 thereto.  The Charge also sets forth the alleged
7  methods of discrimination, *i.e.*, "failing to pay Hispanic
8  employees comparable wages to non-Hispanic employees and
9  failing to promote Hispanics into Management positions."
10 Id.     Further, that Charge includes a time frame – "since
11 at least May 2004[.]"   Id.

12     The Charge does not, however, as Bashas' emphasizes,
13 "identify the categories of employment positions
14 effected[.]"  See id.  At this point in the proceeding, the
15 court does not find that that omission renders the Charge
16 jurisdictionally defective, especially given that a charge
17 "is not the equivalent of a complaint initiating a
18 lawsuit."  See id. at 68.  The function of a charge
19 differs from that of a complaint in an adversary
20 proceeding.  A Title VII charge "place[s] the EEOC on
21 notice that someone (either a party claiming to be
22 aggrieved or a Commissioner) believes that an employer has
23 violated the title."  Id.  The Commissioner's Charge
24 against Bashas' serves that function.

25     Likewise, there is no merit to Bashas' suggestion that
26 the Charge should have "indicat[ed] . . . which of
27 [Bashas'] 41,000 individuals have allegedly been subjected
28 to discrimination."  Resp. (doc. 25) at 11:20-21.

1  Imposing a duty on the Commissioner to, among other

2  things, "specify the person discriminated against, . . .

3  would radically limit the ability of the EEOC to

4  investigate allegations of patterns and practices of

5  discrimination." _Shell Oil_, 466 U.S. at 70.  Such a

6  specificity requirement, along with other requirements,

7  "would cut short most of [the EEOC's pattern and practice]

8  investigations[,]" which, as the _Shell Oil_ Court found,

9  "would be manifestly inconsistent with Congress' intent."

10  Based upon the _Shell Oil_ rationale, the court finds that

11  the Charge at issue herein is not jurisdictionally

12  defective because it does not specify the individuals

13  alleged to have been the subject of discrimination by

14  Bashas'.  In short, the court is convinced that this

15  Charge meets the _Shell Oil_ standard.  Consequently, there

16  is no merit to Bashas' assertion that this court does not

17  have jurisdiction to enforce the May 28th subpoena because

18  the Charge does not provide it with adequate notice of the

19  allegations against it.

20      **_E.  Relevancy_**

21      Lastly, Bashas' contends that the subpoena "seeks

22  information that is completely irrelevant to the

23  allegations of the Charge."  Resp. (doc. 25) at 12:11-12

24  (emphasis omitted).  Bashas' does not explicitly seek

25  denial of enforcement on that basis, although its response

26  could be so construed.  The court therefore is compelled

27  to at least comment upon that assertion.

28

Most recently in <u>Federal Express</u>, the Ninth Circuit reiterated, "[C]ourts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." <u>Federal Express</u>, 558 F.3d at 854 (internal quotation marks and  citations omitted)).  Relevancy in this context "is determined in terms of the investigation rather than in terms of evidentiary relevance." <u>Id.</u> (citation omitted).  "Moreover, the relevancy requirement is 'not especially constraining.' <u>Id.</u> (quoting <u>Shell Oil</u>, 466 U.S. at 68) "The term 'relevant' is 'generously construed' to 'afford[ ] the Commission access to *virtually any material that might cast light on the allegations* against the employer." <u>Id.</u> (quoting <u>Shell Oil</u>, 466 U.S. at 68-69).

Given the expansive definition of relevancy in this context, at least at this juncture, the court is unable to find that the May 28, 2008 subpoena should not be enforced because it is seeking information which, assuredly, is not relevant to its investigation.  Again, at least for the moment, the court is satisfied that the subpoenaed information, while perhaps "not necessarily relevant in an evidentiary sense[,] . . .  will help the EEOC craft additional information requests that may produce evidence of discriminatory treatment." <u>See</u> <u>id.</u>

### F.  Scope of Discovery

Having found that Bashas' is entitled to conduct limited discovery, the court will further define the scope

of that discovery. Bashas' expressly sought leave to serve written discovery requests upon the following:

> [T]he EEOC, the named plaintiffs and plaintiffs' counsel in the *Parra* action, including the Impact Fund and Davis, Cowell & Bowe, as well as Jocelyn Larkin, of the Impact Fund, and Elizabeth A. Lawrence, of Davis, Cowell & Bowell [sic] individually [firm] ... individually, and the UFCW[.]"

Mot. (doc. 10) at 11:12-15. Bashas' shall be allowed to serve written discovery requests upon the foregoing entities and individuals, but the court is limiting the scope of those requests. Bashas' seeks to obtain "documents pertaining to any communications, information or documents provided between the EEOC and these third parties relating to this Commissioner's Charge *or any other charges* currently under investigation by the EEOC." Id. at 11:15-18 (emphasis added). The documents which Bashas' is seeking shall be limited to the Commissioner's Charge dated May 9, 2007, which is the basis for the EEOC's investigation and the issuance of the subpoena which forms the basis for this enforcement action. Bashas' shall not be allowed to obtain documents pertaining to "any other charges currently under investigation by the EEOC." See id.

Bashas' also "seek[s] any documents relating to the *Parra* litigation, which may or may not be subject to the *Parra* court's confidentiality order, provided to the EEOC by the *Parra* plaintiffs or their counsel." Id. at 11:18-20. The court will allow this discovery. It will not, however, allow depositions without leave of court.

Bashas' anticipates completing this discovery within six weeks.  Given that Bashas' is seeking discovery against  multiple non-parties, the court will establish a limitation on the time frame for service of discovery. More specifically, Bashas' shall have twenty-five (25) days from the date of entry of this order in which to serve its written discovery requests.  Response to those requests shall be in accordance with the Federal Rules of Civil Procedure and all other applicable legal authority. Accordingly, Bashas' has six weeks from the date of entry of this order in which to complete the discovery which the court is permitting.

### ***Conclusion***

For the reasons set forth herein, the court hereby ORDERS that:

(1) the "Application for an Order to Show Cause why an Administrative Subpoena Should not be Enforced" (doc. 1) filed by petitioner, the Equal Employment Opportunity Commission, is DENIED without prejudice; and

IT IS FURTHER ORDERED that:

(2) the "Motion for Leave to Conduct Limited Discovery" (doc. 10) by respondent, Bashas', Inc. is GRANTED.  Bashas' shall proceed with such discovery within

/ / /

the parameters set forth herein, including the six week
time frame, which commences on the entry date of this
order.

DATED this 30th day of September, 2009.

Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record